## STATE OF CONNECTICUT *v.* KAREEM A. MCDANIEL
(AC 27646)

Flynn, C. J., and Lavine and West, Js.

---

Argued September 4—officially released December 4, 2007

*Christopher Y. Duby*, special public defender, for the appellant (defendant).

*Russell C. Zentner*, senior assistant state's attorney, with whom, on the brief, was *Timothy J. Liston*, state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Kareem A. McDaniel, appeals from the judgment of conviction, rendered after the trial court, *Holzberg, J.*, accepted his conditional plea of nolo contendere[1] to one count each of possession of a narcotic substance with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of a narcotic substance with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b) and criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (1). The defendant's plea was accepted after the court, *Vitale, J.*, denied his motions to suppress tangible evidence and statements. On appeal, the defendant claims that Judge Vitale improperly denied his motion to suppress illegal drugs found by the police. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the claim on appeal. Prior to November 10, 2003, Middletown police officers received information that the defendant was selling crack cocaine from 48 Rogers Road, Middletown, a public housing project, where he resided with his daughter and girlfriend, Jennifer Gibbs, who rented the apartment. Middletown police Detectives Jorge Yepes and Michael Inglis met with a confidential informant for the purpose of arranging a controlled purchase of crack cocaine from the defendant. The confidential informant made two such purchases, which Yepes and Inglis observed. In addition

---

[1] See General Statutes § 54-94a and Practice Book § 61-6 (a) (2) (i). Judge Holzberg found that the rulings on the defendant's motions to suppress were dispositive of the case.

to the foregoing facts, Inglis and Yepes attested in the affidavit for a search warrant that individuals involved in the sale of narcotics receive a large quantity of the substance that they cut into smaller quantities to sell. The court, *Silbert, J.*, issued a search and seizure warrant for the residence of 48 Rogers Road and the defendant's person.

Inglis, Yepes and other Middletown officers executed the search warrant on November 13, 2003. The police entered the premises after knocking on the door but receiving no response. They found the defendant in the kitchen and arrested him on the criminal trespass charge.[2] On the defendant's person the officers found $3216 and two plastic bags later determined to contain cocaine and marijuana. The defendant was advised of his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). A canine officer searched the premises and the perimeter of the exterior with a trained canine. The canine gave a positive alert to a black, nylon case designed to hold compact discs, which was located near the front steps of 48 Rogers Road. Inside the case was a large quantity of what later tested positive for the presence of cocaine. When the defendant was shown the black case, he hung his head and stated that everything that the police had found was his and had nothing to do with his girlfriend. Shortly before executing the search warrant, Yepes had received information from a confidential source that the defendant kept illegal drugs outside 48 Rogers Road.

On February 8, 2005, the defendant filed a motion to suppress tangible evidence seized during the search of his person and 48 Rogers Road, including but "not limited to the area abutting the property sometimes

---

[2] The defendant expressly was prohibited from entering the housing project by the Middletown housing authority. The defendant had signed a prohibition form, informing him that he would be subjected to civil and criminal penalties if he trespassed on the property.

referred to as the 'curtilage.' " The defendant claimed that the property was not seized pursuant to a valid search warrant because the application and affidavits did not establish probable cause.[3] A hearing was held on the motion to suppress on February 8 and March 4, 2005. Judge Vitale denied the motion to suppress pursuant to a memorandum of decision dated March 9, 2005, in which he determined that there was probable cause to issue the search warrant.

On appeal, the defendant claims that the court improperly denied the motion to suppress tangible evidence because the search of the curtilage was not within the parameters of the search warrant for 48 Rogers Road. The state argues in response that the defendant abandoned that issue during the hearing on the motion to suppress and that he, therefore, is not entitled to review of it on appeal. Although we agree that the defendant abandoned or waived this claim at the suppression hearing, the claim is reviewable, as the record is adequate for review and the claim is of constitutional magnitude. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The defendant cannot prevail, however, because a constitutional violation did not clearly exist, and he clearly was not deprived of his constitutional rights.

The following facts are relevant to the defendant's claim on appeal. At the conclusion of the evidentiary portion of the hearing on the motion to suppress, the following colloquy took place between the court and defense counsel:

"The Court: Sir, are you claiming that the police, as a result of the authority in the search warrant, did not have the ability to search the curtilage of the house?

[3] More specifically, the defendant claimed that the warrant failed to include information the police received that day that he kept the illegal drugs outside the residence.

"Defense Counsel: No, Your Honor, I am suggesting that . . . I am trying to back into a *Franks*[4] argument . . . . I am trying to suggest that perhaps maybe the information that was received from the confidential informant was available to them in a timely enough manner that they probably could have included it. But, more importantly, I think that there is an issue as to whether or not there is a confidential informant here, and I would like to inquire more fully into that area.

"The Court: Okay. If I understand your claim correctly, you are specifically claiming in the first part of your argument, I should say you are not claiming, I should say, in the first part of your argument that the scope of the search warrant was [exceeded] because you are indicating that you are not claiming that the police did not have the ability to search the curtilage at 48 Rogers Road. Is that correct?

"Defense Counsel: I am not, I am not making that point, that is correct, Your Honor."

Furthermore, at times later in the colloquy, defense counsel conceded that the perimeter of 48 Rogers Road is part of the curtilage.[5]

In response to the state's position that his claim is not reviewable, the defendant asks that we review it pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. A constitutional right that has been waived at trial cannot be resurrected successfully on appeal, however, by invoking the *Golding* doctrine. See *State* v. *Fabricatore*, 281 Conn. 469, 915 A.2d 872 (2007).

---

[4] See *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

[5] Defense counsel stated: "I understand, our case law says that the perimeter of the house is part of the curtilage . . . .

"The Court: All right, [defense counsel], but . . . doesn't the law permit the police to search the curtilage also?

"Defense Counsel: There is case law to that effect, Your Honor . . . ."

"Waiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy. . . . Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim." (Internal quotation marks omitted.) *State* v. *Felder*, 95 Conn. App. 248, 254–55, 897 A.2d 614, cert. denied, 279 Conn. 905, 901 A.2d 1226 (2006).

"Under [*State* v. *Golding*, supra, 213, Conn. 239–40], a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Fabricatore*, supra, 281 Conn. 476–77.

"A defendant in a criminal prosecution may waive one or more of his or her fundamental rights. . . . In the usual *Golding* situation, the defendant raises a claim on appeal which, while not preserved at trial, at least

was not waived at trial." (Citations omitted; internal quotation marks omitted.) Id., 478. In *Fabricatore*, our Supreme Court cited with approval opinions of this court holding that a defendant who has waived a constitutional right at trial cannot prevail on that claim on appeal. "[In *State* v. *Cooper*, 38 Conn. App. 661, 670, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996), the Appellate Court] held that a defendant could not satisfy the third prong of *Golding* where he had implicitly waived at trial a challenge to the alleged constitutional deprivation that was the basis of his claim on appeal. Therefore, a defendant cannot prevail under *Golding* on a claim that he implicitly waived at trial. . . . *State* v. *Arluk*, 75 Conn. App. 181, 192, 815 A.2d 694 (2003)." (Internal quotation marks omitted.) *State* v. *Fabricatore*, supra, 281 Conn. 479. "The Appellate Court determined that the defendant's claim [in *Cooper*] was reviewable under the first two prongs of *Golding*, but concluded that, because he had waived his right to have the state prove all elements of his crime, he failed to demonstrate that the alleged constitutional violation clearly existed . . . ." Id.

In *Cooper*, this court also "concluded that the defendant had waived any challenge to the alleged constitutional violation because the defendant not only failed to object to the court's instruction, but also voiced satisfaction with it. . . . To allow [a] defendant to seek reversal now that his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state with that claim on appeal." (Internal quotation marks omitted.) Id., 480–81. In this case, defense counsel not once, but twice, told the court that the defendant was not contesting the validity of the search of the curtilage. For that reason, we conclude that a constitutional violation did not

clearly exist, and the defendant cannot prevail on appeal.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] Although our Supreme Court decided *Fabricatore* pursuant to a *Golding* analysis, an argument has been made that a waiver analysis should be applied when an appellant waives a constitutional right at trial but attempts to undo the waiver by asserting a constitutional claim on appeal and requesting *Golding* review. See *State* v. *Arluk*, supra, 75 Conn. App. 192 (*Landau, J.*, concurring). Although the *Fabricatore* court relied, in part, on *Arluk*, it did not distinguish a *Golding* analysis from a waiver analysis, although it implied that a waiver analysis equally would be valid by noting that a change in strategies would amount to induced error. See *State* v. *Fabricatore*, supra, 281 Conn. 480–81.