******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* PIERRE L. JOSEPH
(AC 35312)

Gruendel, Beach and Norcott, Js.

*Argued April 7—officially released June 17, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Kavanewsky, J.)

*Annacarina Jacob*, senior assistant public defender,
for the appellant (defendant).

*Katherine E. Donoghue*, special deputy assistant
state's attorney, with whom, on the brief, were *John
C. Smriga*, state's attorney, and *Joseph J. Harry*, senior
assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, Pierre L. Joseph, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (3).[1] The sole issue in this appeal is the defendant's claim that his rights under the fifth, sixth, and fourteenth amendments to the United States constitution to be present at trial, to confront his accusers, to counsel, and to a fair trial were violated because he did not receive the assistance of a Creole interpreter during critical stages of his trial. We disagree and, accordingly, we affirm the judgment of the trial court.

The specific factual allegations of the crimes for which the defendant was charged are not relevant to this appeal.

In this case, we must resolve the defendant's claim that certain of his constitutional rights were violated because he did not receive the assistance of a Creole interpreter during critical stages of the prosecution. Specifically, the defendant argues that once the court had notice that he was not a native speaker of English, it "had an obligation sua sponte to determine if the defendant understood the . . . proceedings that had occurred up until that point without the assistance of a Creole interpreter."

The defendant did not raise this claim before the trial court. He nonetheless argues that his unpreserved claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "In *Golding*, our Supreme Court held that a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Internal quotation marks omitted.) *State* v. *Daniel G.*, 147 Conn. App. 523, 539, 84 A.3d 9, cert. denied, 311 Conn. 931, 87 A.3d 579 (2014).

The state does not dispute that the defendant's claim is of constitutional magnitude; it does, however, argue that the record is inadequate to review the defendant's claim. "[U]nless the defendant has satisfied the first *Golding* prong, that is, unless the defendant has demonstrated that the record is adequate for appellate review, the appellate tribunal will not consider the merits of the defendant's claim." *State* v. *Brunetti*, 279 Conn. 39, 54, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127

S. Ct. 1328, 167 L. Ed. 2d 85 (2007). "[I]n the absence of a sufficient record, there is no way to know whether a violation of constitutional magnitude in fact has occurred. . . . Thus, as [our Supreme Court] stated in *Golding*, we will not address an unpreserved constitutional claim '[i]f the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred . . . .' " (Footnote omitted.) Id., 55–56.

The state contends that "[t]he record is insufficient because it is devoid of any legitimate assertion or facts from which a reasonable inference can be drawn that the defendant did not understand the proceedings against him. At best, the record is unclear and ambiguous as to whether the defendant needed an interpreter in order to . . . understand the proceedings." We disagree. Rather, we conclude that the state's argument is "hoist [by its] own petard." W. Shakespeare, Hamlet, act 3, sc. 4. The state first contends that the record is inadequate for us to reach the merits of the defendant's claim but it then proceeds to argue that "[t]he trial transcript, taken as a whole, shows that the defendant had a sufficient command of the English language and was able to understand the witnesses' testimony and communicate with defense counsel." The flaw in this argument is that it conflates a question of *reviewability* with one of *reversibility*. We conclude that the voluminous trial transcript provides a sufficient record for our review.

Having determined that the record is adequate for review, we conclude that the first two prongs of *Golding* are satisfied and, therefore, we will proceed to review the defendant's claim. *State* v. *Daniel G.*, supra, 147 Conn. App. 540; see also *State* v. *Lavigne*, 307 Conn. 592, 599, 57 A.3d 332 (2012) ("[t]he first two [prongs of *Golding* ] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail" [internal quotation marks omitted]). After reviewing the merits of the defendant's claim, we conclude that he cannot satisfy the third *Golding* prong.[2]

The resolution of this case is controlled by our Supreme Court's decision in *State* v. *Munoz*, 233 Conn. 106, 659 A.2d 683 (1995). In *Munoz*, that court held that, "under appropriate circumstances, a defendant's right to confrontation, his right to counsel and his right to be present at trial may be violated if he is not provided with a separate interpreter, who performs the functions of translating for him, into his language, the testimony of English speaking witnesses and interpreting between him and his English speaking counsel during the testimony of all witnesses, both English and nonEnglish speaking. . . . A critical factual underpinning of these constitutional requirements, however . . . is that the defendant has so limited an understanding or ability

to speak English that his ability to comprehend the proceedings and to communicate with his counsel is significantly impaired. Thus, the basic constitutional inquiry is whether any inadequacy in the interpretation made the trial fundamentally unfair . . . . [T]he failure to provide continuous, word-for-word translation will require a new trial only upon such a showing of fundamental unfairness." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 133–34. Applying *Munoz* in *State* v. *Jeudis*, 62 Conn. App. 787, 790, 772 A.2d 715, cert. denied, 256 Conn. 923, 774 A.2d 140 (2001), this court held that "[t]he constitutional standard [for determining whether a trial is fundamentally fair] is whether the defendant can understand the witnesses, communicate and otherwise comprehend the proceedings."

In light of these precedents, we conclude that the defendant has failed to demonstrate that the constitutional violation alleged in this case clearly exists and clearly deprived him of a fair trial. The entirety of the trial transcript reveals that the defendant had a conversational command of the English language, was able to understand the testimony of the witnesses, and could communicate with his counsel. In the defendant's eight previous court appearances, he neither asked for an interpreter nor indicated that he had difficulty understanding the proceedings. Furthermore, during his arraignment, the defendant had communicated orally with the court only in English.[3]

The defendant, through his counsel, did not request an interpreter until the defendant already had taken the stand on direct examination. After requesting an interpreter for the defendant's direct and cross-examinations, his counsel stated (outside the presence of the jury) that he was requesting an interpreter because of the importance of the defendant's trial testimony before the jury.[4] The defendant's counsel further explained that the defendant spoke English, that he had communicated with the defendant in English throughout the representation, and that the defendant understood their conversations.[5] On direct examination, the defendant testified that he and his attorney had discussions in English and that he understood those discussions.[6] Perhaps most significant to us is the fact that the defendant was never—not once—denied the assistance of an interpreter. Indeed, once requested, the interpreter was allowed and was excused only at the conclusion of the defendant's testimony after his counsel indicated that the defendant no longer required the interpreter's services.[7]

All of this satisfies us that despite English not being the defendant's native tongue, he was able to "understand the witnesses, communicate and otherwise comprehend the proceedings"; *State* v. *Jeudis*, supra, 62 Conn. App. 790; such that his trial was not fundamen-

tally unfair. *State* v. *Munoz*, supra, 233 Conn. 134. The fact that at one critical juncture in his trial his counsel requested that the defendant be provided with an interpreter——which he was—does nothing to vitiate this conclusion.[8] We therefore conclude that the defendant's claim must fail because he has not demonstrated that the constitutional violation alleged in this case clearly exists and clearly deprived him of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In addition to the charge of sexual assault in the second degree, the defendant was charged with criminal trespass in the third degree in violation of General Statutes § 53a-109 (a) (1). The jury found him not guilty of that charge.

[2] Because we conclude that the defendant's claim fails to satisfy the third prong of *Golding*, we need not address harmless error. See *State* v. *Fabricatore*, 281 Conn. 469, 482 n.17, 915 A.2d 872 (2007).

[3] The following exchange occurred during the defendant's arraignment:

"The Court: You're charged on count one with sexual assault in the second degree and count two, criminal trespass in the third degree. To these charges, how do you plead?

"The Defendant: Not guilty.

"The Clerk: Do you like to be tried by Court or by jury?

"[Defense Counsel]: Jury trial, please.

"The Court: Mr. Pierre, is that correct, jury election?

"The Defendant: Yes."

[4] Defense counsel and the court had the following exchange:

"[Defense Counsel]: I have always spoken to my client in English. He does understand English from my first day I met him through all the pretrials through preparing for this case during the trial of this case up to this point I've always spoken to him in English. My concern was just as we were discussing his testimony and especially since there's [going to] be cross-examination, I did not want to get anything lost in the translation so to speak.

"The Court: So you're not making any claim that he had any difficulty to date?

"[Defense Counsel]: Absolutely not. Absolutely not.

"The Court: In all your dealings with him?

"[Defense Counsel]: Correct, correct. I just felt that the importance of today, the importance of the direct and cross-examination in this case so that nothing is lost in—in this interpretation, I felt it would be beneficial both to my client's sake and the jury's sake and for the Court's sake."

[5] The defendant argues that "the fact that [the defendant] could speak and understand some English when communicating with his attorney in no way means he had full comprehension of the criminal proceedings against him." This argument misunderstands the defendant's burden on appeal, which in this case is to show that "the defendant [could not] understand the witnesses, communicate and otherwise comprehend the proceedings." *State* v. *Jeudis*, supra, 62 Conn. App. 790. The defendant has failed to persuade us of this, given his admission that he understands English, and his failure to request an interpreter other than for his testimony during trial. See footnote 6 of this opinion.

[6] The defendant and his attorney had the following exchange:

"[Defense Counsel]: English is not your first language, correct?

"[The Defendant]: No.

"[Defense Counsel]: Although you and I have had discussions in English, right?

"[The Defendant]: Yes.

"[Defense Counsel]: And we've understood each other?

"[The Defendant]: Yes.

"[Defense Counsel]: But because you're testifying we have the interpreter here, okay?

"[The Defendant]: Yes."

[7] The defendant argues that this fact is irrelevant because the court should have canvassed the defendant personally. Specifically, he argues that: "It is not enough for counsel to represent to the court that he was able to communicate with the defendant in English. . . . A court should inquire whether an interpreter is needed when a defendant demonstrates an inability to understand the proceedings or to communicate with counsel." (Citation omitted; internal quotation marks omitted.) As authority for this proposition,

the defendant relies on Justice Berdon's concurring opinion in *Munoz*. Justice Berdon concluded that: "Because of the important constitutional rights that are implicated, a trial judge has an obligation to canvass the defendant in order to determine whether he needs an interpreter. . . . An appellate court should not be faced with a silent record and be required to guess at the defendant's degree of proficiency with the English language." (Citation omitted; internal quotation marks omitted.) *State* v. *Munoz*, supra, 233 Conn. 145 n.4 (*Berdon, J.*, concurring). We first note that this statement by Justice Berdon is contained in a concurrence and did not receive support from a majority of our Supreme Court, and therefore, it is not a part of the court's holding in *Munoz*. More significantly, however, we note that the rationale animating Justice Berdon's concern, namely, that an appellate court needs an adequate record in order to determine whether a defendant was deprived of protected constitutional liberties. Far from being "silent," we conclude that the record before us is sufficient to review properly whether the defendant needed an interpreter.

Similarly, relying on case law from other jurisdictions, the defendant contends that "the trial court has an obligation sue sponte to determine if the defendant understood the trial court proceedings that had occurred up until that point without the assistance of a Creole interpreter once it was put on notice that the defendant's first language was not English." Notably, the defendant does not cite any Connecticut case law in support of this proposition. "Even if we were to agree with the merits of the defendant's claim, which we do not, we are an intermediate appellate court whose function is to apply the law—not make new law." *State* v. *Gode*, 145 Conn. App. 1, 11 n.7, 74 A.3d 497, cert. denied, 310 Conn. 933, 79 A.3d 888 (2013). We decline the defendant's invitation to extend our law beyond what our Supreme Court's precedents allow.

[8] On cross-examination the defendant stated that he did not understand the testimony of the police officers who testified against him, which is why he requested an interpreter. Later, however, he did acknowledge that he understood them and knew the meaning of the words "stop" and "halt." Whatever passing inability to understand the defendant was referring to here, we are not convinced that it rendered his trial fundamentally unfair. *State* v. *Munoz*, supra, 233 Conn. 134.

—————————————————